UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONDRE CARR,

    Petitioner,

v.

KENNETH ROMANOWSKI,

    Respondent.

Case No. 14-cv-11580
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS [1] AND
DENYING AS MOOT PETITIONER'S MOTION FOR ORAL ARGUMENT [23]**

    Leondre Carr and Reshia Fitzpatrick had a brief relationship. Fitzpatrick later gave birth to Carr's son. But soon after, Fitzpatrick started dating Dominque Wallace. After Fitzpatrick, Wallace, and Carr spent part of a day visiting with Fitzpatrick's children, an argument broke out. As Wallace's father drove Wallace and Fitzpatrick away, Carr allegedly opened fire on their car with a semi-automatic rifle. Wallace was killed and Fitzpatrick injured.

    A jury convicted Carr of first-degree murder and sentenced him to life in prison without the possibility for parole. After exhausting his direct appeals, Carr petitions this Court for a writ of habeas corpus. As the Court will explain, his claims are without merit.

**I.**

    In 2009, Wallace was dating Fitzpatrick, Carr's ex-girlfriend and the mother of Carr's son.[1] On the day of the murder, Wallace was at Fitzpatrick's home playing with her children. Carr and

---

[1] The factual narrative draws solely from the trial-court record available to the Michigan Court of Appeals. 28 U.S.C. § 2254(d)(1); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (limiting review under § 2254(d)(1) to the record available to the state court that adjudicated the

two friends arrived to visit with Carr's then-infant son. (R. 17, PID 953–54.) The visit turned sour. About an hour after Carr arrived, Fitzpatrick's mother says she heard voices escalating, and believing an argument was brewing, asked everyone to leave. (R. 17, PID 957–58.) Carr and his two friends left the house first. (R. 17, PID 462–63.) Wallace called his father, Shaun, for a ride home, and Fitzpatrick walked across the street to her grandfather's house. (R. 17, PID 959–60.)

As Fitzpatrick went across the street, she saw Carr and his two friends walking down the block. The three men reached the end of the block and remained there. (R.17, PID 549.) Wallace's father arrived and Wallace and Fitzpatrick got into his car. As Wallace's father pulled away, Wallace was shot in the head, and he died three days later. (R. 17, PID 584–85, 588.)

The state charged Carr with killing Wallace. A jury convicted Carr of first-degree murder, two counts of assault with intent to murder, and one count of felon in possession of a firearm. (R. 1, PID 1.) He is currently serving a life sentence without the opportunity for parole.

The Michigan Court of Appeals affirmed Carr's convictions. *People v. Carr*, No. 302370, 2012 Mich. App. LEXIS 1850 (Mich. Ct. App. Sept. 25, 2012). The Michigan Supreme Court denied Carr's application for leave to appeal. (R. 17, PID 1432.)

Carr then filed, *pro se*, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (R. 1.) Carr attacks the constitutionality of his sentence on five grounds. He raises three instances of ineffective assistance of counsel and contends two structural errors occurred during his trial. The state responded to Carr's petition (R. 16), and through counsel, Carr filed a reply (R. 21). The Court will address each of Carr's claims, though, to ease the analysis, not in the order he presents them.

---

claims on the merits). These facts carry a rebuttable presumption of correctness. 28 U.S.C. § 2254(e)(1)

## II.

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) restricts a federal court's power to grant habeas corpus relief to state prisoners. 28 U.S.C. § 2254(d). AEDPA "demonstrates Congress's intent to channel prisoners' claims first into state courts." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). And for that reason, where a state court adjudicates a petitioner's claims "on the merits" relief shall not be granted unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). AEDPA's "difficult to meet" standard allows a federal court to grant relief only "in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## III.

### A.

The Court will turn first to Carr's structural-error claims. Carr thinks the first structural error occurred when a juror commented on Carr's guilt before the close of trial. (R.1, PID 10.) Carr believes the second occurred when the judge allegedly gave the jury an incorrect instruction on reasonable doubt. (*Id.*; R. 21, PID 1635.)

The Michigan Court of Appeals adjudicated these two claims on the merits. *Carr*, 2012 Mich. App. LEXIS 1850, at *6–8, *11. In particular, the appellate court held that, at the end of trial, the judge properly instructed the jury. (R. 17, PID 1234.) And the state court reasoned that the juror's isolated comment did not affect the verdict. (R. 17, PID 1231.) The trial judge "promptly interviewed [the juror] and then the jury as a whole. Based on [the juror's] statements, the court

determined that he was likely biased and removed him from the jury. The court then interviewed the jury members, although as a whole, and discerned that they had not been compromised." (*Id.*)

Carr argues that the Michigan Court of Appeals unreasonably applied *Sullivan v. Louisiana*, 508 U.S. 275 (1993) (holding that the jury's verdict must be beyond a reasonable doubt), *Herring v. New York*, 422 U.S. 853 (1975) (reasoning that a denial of an opportunity to make a closing argument is a denial of counsel), and *Bollenbach v. United States*, 326 U.S. 607 (1946) (holding that an incorrect jury instruction is not cured by an earlier, correct instruction). (R. 21, PID 1635.) The Court disagrees.

First, Carr's trial judge properly instructed the jury on reasonable doubt, using the state's pattern jury instruction. (R. 17, PID 1154–55.) And that pattern jury instruction passes constitutional muster. *See Binder v. Stegall*, 198 F.3d 177, 178–79 (6th Cir. 1999); *Poremba v. Bock*, 92 F. App'x 186, 188 (6th Cir. 2004); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1094 (E.D. Mich. 2004). Providing the jury with a constitutional instruction on reasonable doubt satisfies *Sullivan.* 508 U.S. at 277–78. So Carr has not shown that the Michigan Court of Appeals unreasonably applied that Supreme Court precedent. It follows that his juror-instruction claim does not clear § 2254(d)'s bar to habeas corpus relief.

Carr next argues that the jury began deliberations before the defense presented its case. (R. 21, PID 1635.) Carr bases the claim on the fact that a juror commented on Carr's apparent guilt before the close of trial. (*See* R. 17, PID 1019–20.) Carr thinks the juror's comment means "the jurors were authorized to make up their minds immediately after the last witness testified but before [Carr's] trial court counsel delivered his closing argument and before they received the applicable law via jury instructions." (*Id.* at 1636.) But that is not what happened.

4

Upon learning of the juror's comment, the judge dismissed the juror. (*See* R. 17, PID 1019–20.) The judge then confirmed that the comment did not influence the remaining jurors' ability to decide the case fairly, and all remaining jurors affirmed that they continued to presume Carr innocent. (R. 17, PID 1022–23.) The judge then told the jury they must presume Carr innocent until finding him guilty and could only do so after hearing all the evidence. (R. 21, PID 1636.) The trial proceeded, Carr's counsel gave a closing argument (R. 17, PID 1125–42), the state offered a rebuttal, and the judge instructed the jury on the applicable law. (R. 17, PID 1153–75.)

So Carr cannot show that the Michigan Court of Appeals unreasonably applied *Herring*. 422 U.S. at 858–60 (reasoning that the right to counsel includes a right to a closing argument). And because the judge never provided an erroneous jury instruction, *Bollenbach* is inapposite. Thus, Carr cannot show an unreasonable application of Supreme Court precedent, and he is not entitled to habeas corpus relief. *See* 28 U.S.C. § 2254(d).

**B.**

Carr next raises a challenge to the trial judge's alleged impartiality. Carr says the judge exhibited bias "by ruling as a matter of fact and law that . . . Dominique Wallace was an actual victim." (R.1, PID 5.) Carr argues his not-guilty plea placed Wallace's status as a victim in doubt, so any reference to Wallace as victim violated Carr's due process rights.

The Michigan Court of Appeals adjudicated this claim on the merits. *Carr*, 2012 Mich. App. LEXIS 1850, at *19. The appellate court explained, "Dominique was the victim of a shooting without regard to whether defendant fired the fatal shot. Dominique was not magically transformed into a nonvictim simply because defendant denied pulling the trigger." *Id.*

In his reply brief, Carr for the first time contends that the Michigan Court of Appeals unreasonably applied three Supreme Court precedents holding that an unbiased judge is central to

5

a fair trial. *See Bracy v. Gramely*, 520 U.S. 899, 904 (1997); *Tumey v. Ohio*, 273 U.S. 510, 535 (1927); *Liteky v. United States*, 510 U.S. 540 555–556 (1994). He asserts that the judge's use of the term "alleged victim" "pierc[ed] the veil of judicial impartiality" and amounted to structural error. (R. 21, PID 1608–09, 1612.) By referring to an alleged victim, Carr urges, the judge assumed the prosecution had met its burden on an element of murder, and thereby cast a pro-prosecution bias over the proceedings. (R. 21, PID 1610–12.)

The Court agrees with the Michigan Court of Appeals. Carr did not have a biased trial judge. For one, the only issue at trial was whether Carr was the shooter, and not whether a death occurred. So Dominique Wallace was the victim: he died of a gunshot wound to the head. Carr's petition wrongly assumes that any reference to a victim necessarily implies that Carr, as opposed to someone in general, killed Wallace.

Carr likewise cannot show an unreasonable application of Supreme Court precedent. *Bracy* and *Tumey* dealt with trial judges corrupted by a potential "pecuniary" interest in a certain outcome. *See Tumey*, 273 U.S. at 535; *Bracey*, 520 U.S. at 904. That is not the case here. And *Liteky* reasoned that relying on an extrajudicial source or displaying a "deep-seated favoritism or antagonism that would make fair judgment impossible" raise fair-trial concerns. *Liteky*, 510 U.S. at 555.

Here, the trial judge's use of the term "victim" merely stated the obvious and was not an indication of bias. *See e.g.*, *Medina v. Hornung*, 106 F. App'x 539, 542 (9th Cir. 2004) (reasoning that trial judge's use of the word "victim" in an assault prosecution did not reflect judicial bias). Further, the use of the term "victim" was "formed by the judge on the basis of facts introduced" at trial and a judge's comment formed "on the basis of facts introduced" at trial is immune to an

6

impartiality challenge. *Liteky*, 510 U.S. at 555. Thus, Carr cannot obtain habeas corpus relief on his claim of judicial bias.

In his reply, Carr also raises for the first time a juror-bias claim. During voir dire, a prospective juror inquired about the age of the victim. (R. 17, PID 284.) Because the prospective juror used the word "victim," Carr believes that the prospective juror "started with a presumption that a murder had actually occurred" tilting the jury in favor of the prosecution. (R. 21, PID 1610.) Carr says the prospective juror's presumption violated Carr's right to a fair trial by an impartial jury. *See Irvin v. Dowd*, 366 U.S. 717 (1961).

This claim has no merit even under *de novo* review. (The Michigan Court of Appeals did not address the claim because Carr did not present it.) For the reasons discussed above, the prospective juror's use of the word victim did not indicate bias. And the state exercised a preemptory challenge to excuse the prospective juror. (R. 17, PID 313.)

## C.

Carr next raises three separate instances of ineffective assistance on the part of his trial counsel. Carr takes issue with his lawyer's failure to object to "surprise testimony" (R. 1, PID 7), his lawyer's failure to object to erroneous jury instructions (R. 1, PID 10), and his lawyer's failure to elicit evidence showing that Carr's height "substantially conflicted" with a witness's description of the shooter (R. 1, PID 8). The Court will address these arguments in turn.

Success on an ineffective-assistance-of-counsel claim requires Carr to point to evidence of his trial lawyer's deficient performance and then explain how that deficient performance prejudiced his legal defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). But where § 2254(d) applies, as it does here, a petitioner seeking habeas corpus relief must clear a higher hurdle. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550

7

U.S. 465, 473 (2007)). Carr must show that the state court unreasonably applied *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). As a result, the already deferential *Strickland* standard becomes "doubly so." *Id.*

Carr says his lawyer should have objected to the surprise testimony of Tai Johnson and Ryan Larrison. (R. 1, PID 7.) Carr argues that because Larrison and Johnson were not on the list of testifying witnesses, his counsel should have moved to bar their testimony. The erroneous decision not to try to bar the testimony allegedly left Carr's lawyer "utterly ill-equipped" to mount a defense. (R. 21, PID 1621.)

The Michigan Court of Appeals adjudicated this claim on the merits, *Carr*, 2012 Mich. App. LEXIS 1850, at *20, and reasonably concluded that Carr could not establish prejudice. To be sure, the prosecutor should have included both names on the list of testifying witnesses, *see* Mich. Comp. Laws §767.40(a)(3), so Carr's counsel had a basis to object. And the point of the statute is to allow defense counsel to research and rebut potential trial testimony. *Id.* But as the Michigan Court of Appeals found, the failure to object did not prejudice Carr. Although Larrison was not identified as a testifying witness, his testimony was no surprise. Larrison was the state evidence technician that linked the rifle to the crime scene and had been included on a known witness list. So Carr's attorney had ample time to research Larrison's testimony, as demonstrated by counsel effectively cross-examining Larrison on the extent to which the rifle he examined differed from witness testimony about the rifle used. (R. 17, PID 898–903.) And though Johnson was not on any witness list, she owned the home where police executed a search warrant and discovered the murder weapon. Thus, the Michigan Court of Appeals reasonably found that Johnson's connection to the home put Carr's lawyer on notice that he would need to rebut Carr's connection to Johnson. In point of fact, Carr's counsel did exactly that: he established that multiple

8

men frequented Johnson's home, and on the night prior to the execution of the search warrant, Johnson entertained fifteen guests at a house party. (R.17, PID 693–703.) Because the record shows Carr's counsel was prepared to cross Larrison and Johnson, Carr cannot show prejudice flowing from counsel's failure to object. Accordingly, Carr cannot demonstrate an unreasonable application of *Strickland* and cannot obtain habeas corpus relief.

Next, Carr claims his trial counsel should have elicited exculpatory evidence that Carr was taller than the shooter as described by one eyewitness. (R. 21, PID 1626.) That witness described the shooter as 5'10". (R. 17, PID 538.) But Carr stands 6'5" tall—a fact Carr's counsel brought to the jury's attention in the opening statement. (R. 17, PID 411.) So ultimately Carr complains that his counsel did not corroborate the opening statement with evidence admitted at trial. (R. 21, PID 1633.)

The Michigan Court of Appeals adjudicated this claim on the merits. *See Carr*, 2012 Mich. App. LEXIS 1850, at *25–26. The appellate court concluded that Carr could not show prejudice under *Strickland* because the prosecution's case turned on Carr's relative height as opposed to his actual height. *Id.* This was reasonable. In particular, one police officer interviewed Carr and the two men he was with on the day of the shooting. The officer testified that Carr was much taller than the other two. (R. 17, PID 1047, 1049–50.) And both eyewitnesses—including the one that described Carr as 5'10"—testified that the tallest of the three men fired the weapon. (R. 17, PID 467–68, 538.) Thus, the Michigan Court of Appeals reasonably found that counsel's failure to prove that Carr was 6'5" did not prejudice Carr.

Finally, Carr believes his lawyer should have objected to the trial court's reasonable doubt instruction and to allegedly premature jury deliberations. (R. 1, PID 10.) The Michigan Court of Appeals adjudicated the jury instruction claim on the merits. *Carr*, 2012 Mich. App. LEXIS 1850,

9

at *27. Carr raises the premature jury deliberations claim for the first time in his reply. (R. 16, PID 1635.) Importantly, Carr also raises these claims as stand-alone structural error claims, and as explained above, the stand-alone claims fail. So on either deferential or *de novo* review, as the Michigan Court of Appeals reasonably concluded, counsel made sound decisions not to object. *Carr*, 2012 Mich. App. LEXIS 1850, at *26–27; *see also Campbell v. Coyle*, 260 F.3d 531, 557 (6th Cir. 2001) (reasoning that counsel is not ineffective for deciding not to object to correct jury instructions). Thus, Carr cannot obtain habeas corpus relief on his final ineffective-assistance claims.

## IV.

For the foregoing reasons, Carr's petition for a writ of habeas corpus is DENIED. Accordingly, Carr's motion to grant oral argument (R. 23) is denied as moot. And because the Court believes that no reasonable jurist would issue a writ of habeas corpus on Carr's claims, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the Court DENIES Carr a certificate of appealability.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: November 27, 2017         U.S. DISTRICT JUDGE

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 27, 2017.

s/Keisha Jackson
Case Manager